**Harry WILLIAMS**

v.

**INDEPENDENT NEWS CO., INC. and National Periodical Publications, Inc.**

**Civ. A. No. 68–171.**

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1972.

David H. Pittinsky, Carl H. Hanzelik, Philadelphia, Pa., for plaintiff.

K. Robert Conrad, Barbara W. Mather, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

MASTERSON, District Judge.

This is a motion by plaintiff for judgment notwithstanding the verdict of the jury or, in the alternative, for reconsideration of plaintiff's motion for a new trial. We denied plaintiff's motion for a new trial on the date the jury returned its verdict. We thereafter vacated our oral denial of that motion and have reconsidered it. We again deny the motion.

## BACKGROUND

This action was initiated under Section 16 of the Clayton Act, 15 U.S.C. § 26, for equitable relief, and under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages against defendants for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The action was brought by Harry Williams, plaintiff, against Independent News Co., Inc. ("Independent") and National Periodical Publications, Inc. ("National").

Plaintiff was a distributor of off-sale full-copy return comic books[1] during, but not limited to, the period from January 1, 1962 to December 31, 1969. Defendants Independent and National were a national distributor and publisher, respectively, of magazines and periodicals, including comic books, during, but not

limited to, the period from June 14, 1957 to December 31, 1969. Independent was a wholly-owned subsidiary of National during, but not limited to, the period from June 14, 1957 to December 31, 1969. Magazine Management Company ("Magazine") was the publisher of Atlas comic books during the same period. Magazine is not a party to this action.

On June 14, 1967, Magazine contracted with Independent for the exclusive distribution of Atlas comics. Pursuant to and during the existence of the contract between Magazine and Independent, Magazine had the right to request the return of off-sale full-copy Atlas return comic books. Pursuant to the contract, Magazine gave to Independent its most current issue of Atlas comic books and Independent distributed them to its wholesalers. Independent's wholesalers distributed the current Atlas comic books to retailers who sold them to the public. When the current Atlas comic books arrived at the retailers, it was the practice for the retailers to gather together any previously distributed Atlas comics which had not been sold and return them with their covers intact to Independent's wholesalers. The wholesalers then shipped the returned comics to a warehouse designated by Magazine pursuant to Magazine's request for return of off-sale full-copy return comic books.

Upon the return of the Atlas comic books by each party in the chain of distribution to another party, a full credit was given to such party so that he was not charged for them. Upon the ultimate return of the comic books to the warehouse designated by Magazine, Independent then paid Magazine for the actual number of Atlas comics of that issue that had been distributed and sold through Independent, less Independent's commission.

Magazine sold some of the off-sale full-copy Atlas return comic books to Israel Waldman ("Waldman") who sold

[1]. The term off-sale full-copy return comic books refers to comic books with their covers intact which are no longer current because either a more current issue has been distributed or the period for distribution has expired.

them to plaintiff. It was represented to Magazine by Waldman that these comic books would be used as premiums.[2] Waldman promised not to distribute the comics to the general public or offer them for resale to the general public. Instead, the comic books purchased by Williams proceeded down the chain of distribution to plaintiff's wholesalers and then to their retailers who sold them at a lower price than a new issue comic book. The off-sale full-copy Atlas return comic books sold and distributed by plaintiff competed at the retail level with Atlas and National current cover comic books distributed by Independent's wholesalers.

Before the date on which Magazine ceased selling the off-sale full-copy Atlas return comic books to Waldman, National was concerned about the effect on its subsidiary, Independent, of the sale of back issue comic books in competition with current Atlas and National comics. Moreover, Independent knew, before the date on which Magazine ceased selling to Waldman, that some of the back issue Atlas comic books which were appearing and competing with current Atlas and National comic books in Independent's wholesalers' areas of principal responsibility were being distributed and sold by plaintiff. National discussed the problem with Independent.

Plaintiff presented a two-pronged theory of recovery at trial. He alleged that Independent complained to Magazine about the loss of business caused by the competition with back issue comics sold and distributed by Harry Williams. He averred that either or both of the defendants agreed with or came to an understanding with Magazine to prevent the continuation of such competition. Plaintiff argued that it was unlawful for defendants to agree not to sell to

Waldman for the purpose of preventing Williams from competing with Independent News.

Plaintiff also argued that it is unlawful for a manufacturer to seek to impose area restrictions on the right of resale of an article after the manufacturer has parted with title, dominion and risk of loss with respect to the product. Plaintiff alleged that in this case, Independent parted with all title, dominion and risk of loss with respect to the Atlas comics when it returned them to Magazine for a credit. Plaintiff argued at trial that it was unlawful for Independent to attempt to limit the method Magazine could use to redistribute the comics after Independent had parted with all vestiges of control.

## OPINION

■ In our instructions to the jury, we stated that the Sherman Antitrust Act prohibits every contract, combination or conspiracy in restraint of trade. (N.T. 489.) We added, however, that the Supreme Court has adopted the rule of reason to avoid the absurd results of a literal application of the Act. (N.T. 490)[3]. Only contracts which unreasonably restrain trade are illegal. Exclusive distribution contracts, for example, are not in themselves an unreasonable restraint of trade. A manufacturer has the right to establish an exclusive distributor to sell or not to sell to whomever he wants provided he does not make unreasonable conditions on the method of distribution.

■ With respect to the manufacturer's right to have an exclusive distribution system, we discussed United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). We explained that a vertical distribution arrangement[4] is not violative of Section

2. A premium account is a dealer who sells comics to be used as gifts in prize-bags for children and as give-a-ways. A premium dealer does not sell comics to the general public or offer them for resale to the general public.

3. See United States v. Topco Associates, Inc., 405 U.S. 596, 606, 92 S.Ct. 1126,

31 L.Ed.2d 515 (1972) ; Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

4. We informed the jury that a vertical distribution arrangement is one where the manufacturer distributes goods to the wholesalers who distribute to the retailers who sell to the public.

1 of the Sherman Act if the manufacturer retains dominion, control and risk of loss of the product during its circulation through the distributive chain. (N.T. 492). Where, however, the product is sold to the distributor and dominion, control and risk of loss are transferred to him, then any subsequent attempt by the manufacturer to control the sale of the product is a violation of the Sherman Act. (N.T. 492).

To assist the jury in understanding the distinctions which the Supreme Court deemed important in determining whether certain conduct is permissible or prohibited, we read part of the *Schwinn* opinion to them. (See N.T. 493–94). The *Schwinn* opinion reiterated our instructions to the jury and added:

> "Where the manufacturer retains title, dominion, and risk with respect to the product and the position and function of the dealer in question are, in fact, indistinguishable from those of an agent or salesman of the manufacturer, it is only if the impact of the confinement is 'unreasonably' restrictive of competition that a violation of § 1 results from such confinement." (N.T. 494 quoting 388 U.S. 380, 87 S. Ct. 1866).

Plaintiff's motion for a new trial is based upon the assertion that it was "undisputed" that Independent had an agreement under which it imposed conditions on the resale of the off-sale full-copy Atlas return comic books to Magazine after Independent had departed with dominion, control and risk of loss of the comics.

■■ Contrary to plaintiff's assertion, however, defendant adduced evidence at trial that there was no agreement with respect to what Magazine was to do with the comics after they were returned. The deposition of Paul Sampliner, president of Independent at the time in question, amply supports defendant's position. Sampliner stated that he never told Magazine that it would have to terminate its sales to Waldman. (Sampliner Dep., pp. 21–27, 39–42.) He informed Magazine that it could continue to sell full-copy return comics if they were sold as premiums. The jury could have concluded that the sale of the comics to Waldman was terminated not because of any agreement between Independent and Magazine but because of an agreement between Magazine and Waldman that Waldman would not resell to other than premium accounts. Hence, there is no merit in plaintiff's motion for a new trial.

■ Nor can we grant plaintiff's motion for judgment notwithstanding the verdict of the jury. There was ample evidence presented at trial for the jury to find that Magazine consigned the comic books to Independent and that at all times, as the magazines passed down and back up the distributive chain, Magazine retained dominion, control and risk of loss of the comics. Harold Chamberlain, president of Independent, testified with respect to the method of distribution and compensation for the magazines.

He stated that Independent is a national distributor which represents publishers and receives a commission only for the magazines it sells. (N.T. 349–50). Chamberlain testified that Independent does not purchase the magazines from the publisher, but merely distributes them pursuant to a consignment contract whereby copies are consigned down the distributive chain. (N.T. 349–51, 360.) Unsold copies are charged back to the publisher (N.T. 350). Chamberlain also testified that if the magazines are lost after consignment to the wholesaler, the publisher bears the loss. (N.T. 361.)

Plaintiff maintains, however, that Independent at some time assumed title, dominion and risk and then, at a later date, parted with it when Independent returned the comics to Magazine for a credit. Although it is true that a violation of the antitrust laws could have occurred had Independent obtained dominion over the magazines, the jury appar-

ently did not conclude that there was any passage of title from Magazine to Independent. Chamberlain's testimony provided the jury with an adequate basis for such a conclusion.

In this case there was ample evidence to support a jury finding that Magazine never relinquished title, dominion or risk of loss with respect to the magazines, that there was no sale of the comic books to Independent, and that Independent never acquired title, dominion or risk of loss.

Moreover, the jury apparently concluded that the arrangement in this case was not unreasonable and did not create an unreasonable restraint of trade. This conclusion is entirely in accord with the law because such agreements are not illegal per se. The legality of the exclusive distribution arrangement was a question for the jury to decide under the instructions we provided them on reasonableness. Since there was ample evidence to support the jury finding that Magazine never lost dominion and control of the magazines and that the vertical distribution arrangement was reasonable, there is no merit in plaintiff's motion for a new trial.